# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**Angel Ayala-Vazquez,**

Petitioner,

v.

**United States of America,**

Respondent.

CIVIL NO. 15-2447 (PG)
Related Crim. No. 09-0173-1 (PG)

## OPINION AND ORDER

Before the court is Petitioner Angel Ayala-Vazquez's ("Petitioner" or "Ayala-Vazquez") motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (Dockets No. 1, 22, 28) and the United States' (or the "Government") opposition thereto (Docket No. 11). For the following reasons, the court **DENIES** Petitioner's motion to vacate.

## I. BACKGROUND

On April 15, 2010, a Grand Jury returned a Second Superseding Indictment charging Ayala-Vazquez, his brother, Luis Xadiel Cruz-Vazquez, and sixty-three other co-defendants for their involvement in a drug-trafficking conspiracy. See Crim. No. 09-173 (PG) (herein "Crim."), Docket No. 775. Ayala-Vazquez was charged with conspiracy to possess with intent to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1), 846 and 860 (Count One); conspiracy to import narcotics into the customs territory of the United States, in violation of 21 U.S.C. § 963 (Count Two); possession with intent to distribute heroin, crack cocaine, cocaine and marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 860 and 18 U.S.C. § 2 (Counts Three to Six); conspiracies to commit money laundering, in violation of 18 U.S.C. §

1956(h) (Counts Seven to Eleven); and narcotics and money laundering forfeiture allegations, under 21 U.S.C. §§ 853, 881, and 18 U.S.C. § 982. See id.

On April 13, 2011, the court dismissed Count Eleven as to Ayala-Vazquez upon request of both the Government and Petitioner's counsel. See Crim. Dockets No. 1594, 1597, 3019. Ayala-Vazquez proceeded to trial and the jury found him guilty on Counts One through Nine. See Crim. Docket No. 1606. Ayala-Vazquez was sentenced to a term of life imprisonment. He appealed, but the First Circuit Court of Appeals affirmed his conviction and sentence. See United States v. Ayala-Vazquez, 751 F.3d 1 (1st Cir. 2014).

## II.　STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255, a federal prisoner may move to vacate, set aside, or correct his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); Hill v. United States, 368 U.S. 424, 426-427 (1962); Ellis v. United States, 313 F.3d 636, 641 (1st Cir. 2002).

### *Ineffective Assistance of Counsel Claims*

The Sixth Amendment guarantees that in all criminal prosecutions, the accused have a right to the assistance of counsel for their defense. U.S. Const. amend. VI. It has long been recognized that the right to counsel means the right to effective legal assistance. Strickland v. Washington, 466 U.S. 668, 686 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771 n. 14 (1970)). Where, as here, a petitioner moves to vacate his sentence on ineffective

assistance of counsel grounds, he must show that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." Strickland 466 U.S. at 686; see also Argencourt v. United States, 78 F.3d 14, 16 (1st Cir. 1996) (a petitioner seeking to vacate his sentence based on the ineffective assistance of counsel bears a very heavy burden). "Judicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689.

For Petitioner's ineffective assistance of counsel claim to succeed, he must satisfy a two-part test. First, Petitioner needs to show that "counsel's representation 'fell below an objective standard of reasonableness.'" Padilla v. Kentucky, 559 U.S. 356, 366 (2010) (quoting Strickland, 466 U.S. at 688). Second, Petitioner must establish that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been more favorable to him. See United States v. Carrigan, 724 F.3d 39, 44 (1st Cir. 2013) (citing Missouri v. Frye, 132 S. Ct. 1399, 1409 (2012)). Petitioner must demonstrate both incompetence and prejudice. Failure to prove one element proves fatal for the other. See United States v. Caparotta, 676 F.3d 213, 219 (1st Cir. 2012). Nonetheless, the court "need not address both requirements if the evidence as to either is lacking." Sleeper v. Spencer, 510 F.3d 32, 39 (1st Cir. 2007). Thus, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice…that course should be followed." Strickland, 466 U.S. at 697.

### III. DISCUSSION

On October 5, 2015, Ayala-Vazquez filed the pending motion to vacate under 28 U.S.C. § 2255 attacking his conviction and sentence. See Docket No. 1. At the underbelly of

Petitioner's arguments lies a recurring and persistent belief that his trial was marred with unfairness as a result of allegedly improper conduct by the Government and this court. The court will only attend the six claims that were adequately presented and developed, alongside the litany of ineffective assistance of counsel claims tied to each of them.

Except for the judicial bias claim analyzed in Section D of this Opinion and Order, Petitioner failed to present at least five other arguments on appeal. Therefore, he has the added burden of proving good cause and actual prejudice with respect to the procedurally defaulted claims. See Owens v. United States, 483 F.3d 48, 56 (1st Cir. 2007) (setting forth analysis of claims subject to procedural default doctrine). The First Circuit has held that "[o]ne way to meet the cause requirement is to show constitutionally ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984)." Wider v. United States, 806 F.3d 653, 658 (1st Cir. 2015). Conversely, if Petitioner fails to establish that the procedural default was the result of his attorney's ineffectiveness, then such claims cannot be presented by way of a § 2255 motion. See United States v. Frady, 456 U.S. 152, 165 (1982) (holding that "a collateral challenge may not do service for an appeal").

Furthermore, the court has deemed waived any other argument that is merely mentioned in passing or is hidden behind Petitioner's primary complaints as a mere afterthought. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (holding that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

Against this background, the court will address Petitioner's adequately developed claims in turn.

  *A. Brady claim*

First, Ayala-Vazquez contends that his rights to due process and a fair trial were infringed when the Government failed to disclose a DEA-6[1] report detailing a conversation held between a confidential source ("CS") and a task force agent. See Docket No. 1 at 19-23. Petitioner's argument is centered on the fact that the confidential source identified Carlos Gonzalez as the supervisor of the drug distribution points controlled by Ayala-Vazquez. On the other hand, the Government's witnesses at trial testified that it was Xadiel Cruz-Vazquez, Ayala-Vazquez's brother, who was in charge of the daily operations of Ayala-Vazquez's drug point at the Barbosa Housing Project. Therefore, Petitioner believes that this DEA-6 report could have served as critical impeachment evidence challenging the veracity of Government's witnesses at trial. Additionally, Petitioner contends that his appellate counsel's assistance was ineffective for failing to present this issue. See id. at 31.

In Brady v. Maryland, 373 U.S. 83, 87 (1963), the Supreme Court held that the government violates the accused's due process rights whenever it suppresses evidence favorable to the accused, because it is material to determining either guilt or punishment. A true Brady violation has three components, namely, "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-282 (1999).

---

[1] DEA is short for Drug Enforcement Administration.

It is possible to impeach a witness by presenting a prior statement made by said witness that is inconsistent with his testimony at trial. See Fed. R. Evid. 613. However, in the present case the record does not show, nor does Ayala-Vazquez claim that either the confidential source mentioned in the DEA-6 report or the task force agent that prepared said report testified at trial. As a result, the DEA-6 report in question would have been inadmissible as impeachment evidence.

Even if any of the declarants mentioned in the DEA-6 report had testified at trial, Petitioner still fails to establish the third component of a Brady violation because he has not shown that the withheld document caused him prejudice. To establish prejudice, Petitioner has to prove that there is a "reasonable probability that the result of the trial would have been different if the suppressed documents had been disclosed to the defense." Jackson v. Marshall, 634 F. Supp. 2d 146, 160 (D. Mass. 2009) (quoting Strickler, 527 U.S. at 289). Therefore, "[w]e do not ... automatically require a new trial whenever a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict." United States v. Dumas, 207 F.3d 11, 15 (1st Cir. 2000) (quoting Giglio v. United States, 405 U.S. 150, 154 (1972)). There is nothing in the report here at issue that could have reasonably led the jury to reach a different verdict in Ayala-Vazquez's case. If anything, the report would have been prejudicial to Ayala-Vazquez's defense because it confirms that he "controls drug distribution points located at the Barbosa and Sierra Linda housing projects in Bayamon, PR." See Exh. 2 at Docket No. 1-1. Petitioner fails to prove that the DEA-6 report was exculpatory or impeaching and he fails to demonstrate that the Government's failure to disclose said report caused him prejudice.

As noted above, Petitioner fails to establish the first and third components of a Brady violation. Therefore, the court concludes that his Brady violation claim lacks merit. The court also rejects his contention that appellate counsel was ineffective for failing to raise this issue on appeal, as his attorney was "under no obligation to raise meritless claims. Failure to do so does not constitute ineffective assistance of counsel." Acha v. United States, 910 F.2d 28, 32 (1st Cir. 1990).

*B. Perjured Testimony Claim*

Ayala-Vazquez follows up his first argument by alleging that the Government purposely introduced perjured testimony at trial. In support of this claim, Petitioner makes reference to the pleadings filed by Elvin Torres-Estrada in Crim. No. 11-045 (PG), and argues that, "[u]pon information and belief [they] contain information, including sworn declarations, that present clear prejudicial Brady violations, because the government had exculpatory and impeachment evidence in its possession before trial but failed to disclose that evidence to the defense." Docket No. 1 at 23. Ayala-Vazquez states that he will seek (1) relief in the form of disclosure of Torres-Estrada's pleadings; (2) leave to supplement the issue if procedurally necessary, and (3) "an evidentiary hearing to question all declarants who may have submitted declarations in support of Torres Estrada's sealed motions." Id. at 24. Furthermore, Petitioner believes that his appellate counsel was ineffective for failing to raise this issue on appeal. See id. at 32.

At the outset, Petitioner does not specify the "information" that led him to conclude that the Government's withholding of the materials constitutes a clear Brady violation. Instead, he asks that this court accept at face value his allegation that the filings in question "would

severely call into question the credibility of the government's cooperating and trial witnesses." See Docket No. 1 at 24. But Petitioner does not present any concrete or verifiable facts in support of his argument. To add insult to injury, Petitioner fails to indicate where, among the thousands of docket entries, the court may find these filings. This court, like all federal courts, "will not 'do counsel's work,' … and are not 'obliged to dream up and articulate [parties'] arguments for them.'" Hudson v. Town of Weare, Civil No. 11-90 (JL), 2012 WL 6149523, at *2 (D.N.H. December 11, 2012) (quoting Holmes v. Spencer, 685 F.3d 51, 68 (1st Cir. 2012); Cruz-Erazo v. Rivera-Montañez, 212 F.3d 617, 622 n. 3 (1st Cir. 2000)). Therefore, Ayala-Vazquez's underdeveloped and unsupported claim regarding the presentation of perjured testimony is deemed waived. See Zannino, 895 F.2d at 17.

Ayala-Vazquez also fails to substantiate his ineffective assistance of counsel claim. The upshot, again, is that the court must deemed that claim waived. "Mere assertions of ineffective assistance of counsel are just that—assertions that are not to be entertained by the Court. Ineffective assistance of counsel claims raised in a perfunctory manner … are deemed waived." Sanchez-Ramirez v. Mercado-Figueroa, Civil No. 12-1651 (SEC), 2013 WL 3973379, at *6 (D.P.R. July 31, 2013) (quoting Mangual-Garcia v. United States, 08-2241 (CCC), 2010 WL 339048, at *9 (D.P.R. January 21, 2010)).

## C. *Crawford* Claim

Ayala-Vazquez asserts that the Government violated his Sixth Amendment right to confront witnesses by introducing a taped conversation between informant Jose Berberena-Gerena and one of his co-conspirators, Charlie Martinez-Baez ("Charlie"). See Docket No. 1 at 24. The evidence in question was presented at trial through FBI agent Edward O. Cabral.

The informant himself did not testify. See Crim. Docket No. 3002 at 43-65. Petitioner argues that the informant's statements were "testimonial," and thus, within the purview of the Sixth Amendment's Confrontation Clause. See Docket No. 1 at 28. Ayala-Vazquez also claims ineffective assistance of appellate counsel based on the attorney's failure to raise the issue on appeal. See id. at 32.

In support, Ayala-Vazquez emphasizes the Supreme Court's statement in Crawford v. Washington, 541 U.S. 36, 59 (2004), that, historically, "[t]estimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." However, the holding in Crawford permits the use of testimonial statements under certain circumstances even when the other party was not given a chance to cross-examine the witness. For example, "[t]he [Confrontation] Clause does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." Id. at 76 n. 9 (alteration in original). This exception is firmly rooted in the language of the Federal Rules of Evidence, which define hearsay as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence **to prove the truth of the matter asserted**. See Fed. R. Evid. 801(c) (emphasis added).

In this case, Petitioner's trial counsel and the prosecution agreed that the informant's statements in the audio-tape recording were to be admitted conditionally as a means of putting into context the statements made by Ayala-Vazquez's co-defendant, Charlie Martinez-Baez. See Crim. Docket No. 3002 at 33-35. In other words, the informant's

statements were not admitted to prove the truth of the matter asserted. The court accepted the parties' request and gave the following limiting instruction to the jury:

> What counsel has requested is that it be conditionally admitted, which means that subsequent or with another witness the tape will be supposedly fully identified and then it would be admitted, except that since there are at least two persons in the conversation, one of them is the informant, and the statements that he makes on that CD are not statements for the truth of the matter asserted therein. These are conditioned so that you have the context in which the conversation took place between the informant and another individual. **So the statements of the informant are not presented here for the truth of the matter which they assert in that CD**.

Crim. Docket No. 3002 at 43-44 (emphasis added). As a result, the informant's statements were admissible under a well-established exception to the hearsay rule. See United States v. Cruz-Diaz, 550 F.3d 169, 176 (1st Cir. 2008) (footnote omitted) (holding that out-of-court testimony may nevertheless be admitted into evidence if "the statement is *not* hearsay in that it is being admitted for a purpose other than establishing the truth of the matter asserted"); United States v. Maher, 454 F.3d 13, 19-20 (1st Cir. 2006) (citation omitted) (stating that "Crawford holds that a declarant's 'testimonial' out-of-court statement is not admissible under the Confrontation Clause unless . . . the evidence is admitted for purposes other than establishing the truth of the matter asserted").

Additionally, Petitioner contends that the court erred in admitting Charlie's comments in the tape under the co-conspirator hearsay exception in Fed. R. Evid. 801(d)(2)(E).[2] Specifically, Ayala-Vazquez argues that in order for the statement to be admissible under

---

[2] The exception in question states that a statement is not hearsay if it "was made by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E).

this exception, the court must have concluded by a preponderance of the evidence: "(1) the existence of a conspiracy, (2) the defendant's membership in that conspiracy, (3) the declarant's membership in the same conspiracy, and (4) that the statement be made in furtherance of the conspiracy." Docket No. 1 at 29 (quoting United States v. Rivera-Donate, 682 F.3d 120, 131 (1st Cir. 2012)). Petitioner claims that the court did not make these findings before admitting the evidence, and that his trial counsel "inexplicably failed to request" the same. See id.

The four-element test elucidated by the First Circuit in Rivera-Donate does not have to be applied at the very instant that the evidence in question is to be admitted. In fact, "[a] district court faced with a challenge to the admission of a co-conspirator's statement must provisionally admit the statement and then wait until the end of the trial to consider whether, in light of all the evidence, [these] four conditions are satisfied by a preponderance of the evidence." Rivera-Donate, 682 F.3d at 131 (citing United States v. Diaz, 670 F.3d 332, 348 (1st Cir. 2012)). Thus, Ayala-Vazquez's trial counsel did not provide constitutionally-deficient performance for not requesting a finding of the above-discussed elements at the time the evidence was provisionally introduced.[3]

In any event, the first two elements were met by the Government's evidence from which a reasonable jury could conclude that a drug trafficking conspiracy existed and that the defendant, Ayala-Vazquez, was a key member of said conspiracy. See Ayala-Vazquez, 751

---

[3] Under Strickland and its progeny, the burden of proving counsel's deficiency falls squarely on the shoulders of the defendant, who must overcome "the presumption that, under the circumstances, that challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689. After a close review of Petitioner's motion and supplemental pleadings, the court finds that he has failed to satisfy this burden.

F.3d at 12 (alteration in original) (explaining that "Ayala does not contest that he distributed drugs to sellers who ultimately sold those drugs at Barbosa. Indeed, the evidence at trial proved Ayala controlled all of the DTO's operations there."). The third element, declarant's membership in the conspiracy, was confirmed by Jose Arce Baez's testimony at trial which identified Charlie, his cousin, as Ayala-Vazquez's runner. See id.; see also Crim. Docket No. 3002 at 110. Furthermore, Charlie himself pled guilty to conspiring to possess with intent to distribute controlled substances. See Crim. Docket No. 1517. The fourth element, that the statement in question be made in furtherance of the conspiracy, is satisfied because the tape at issue here recorded a drug transaction held between the informant and Charlie at the Barbosa Public Housing Project in Bayamon. This is the very drug point that Ayala-Vazquez controlled. See Crim. Docket No. 3002 at 28, 51. Charlie's recorded statements were made in furtherance of the drug trafficking conspiracy that he admitted as belonging to, and as such, indisputably admissible under co-conspirator hearsay exception set forth in Fed. R. Evid. 801(d)(2)(E).

Based on the foregoing analysis, the court finds that Petitioner's Crawford challenges to the evidence admitted at trial lack merit. His request for habeas relief on this ground is thus denied.

Now, Ayala-Vazquez further alleges that he received ineffective assistance of appellate counsel, who did not present the purported Crawford violations on appeal. See Docket No. 1 at 32. Nevertheless, he fails to show that his appellate counsel's performance was objectively deficient, or that, but for counsel's omissions, he would have prevailed or obtained a more favorable result on appeal. These shortcomings prove fatal to his claim. See

Strickland, 466 U.S. at 697. Importantly, attorneys are under no obligation to present meritless arguments on appeal. See Acha 910 F.2d at 32. Having failed to meet either prong of the Strickland test, Petitioner's ineffective assistance of counsel claim fails as well.

   *D. Alleged Impartiality by the Court (Judicial Bias Claim)*

Next, Ayala-Vazquez claims that the court failed to preserve an attitude of impartiality. In support, he points to a series of comments made by the court to the jury, together with two specific comments directed at Ayala-Vazquez's counsel. See Docket No. 1 at 33. When addressing these comments, the court keeps in mind that "[t]rial judges are constantly making judgments about … the need to clarify witness answers, and similar matters of trial management. In this realm, the widest possible latitude is given to the judge on the scene." Deary v. City of Gloucester, 9 F.3d 191, 195 (1st Cir. 1993) (quoting Rodriguez v. Banco Cent. Corp., 990 F.2d 7, 13 (1st Cir. 1993)). Furthermore, "[i]t is well-established that a judge is not a mere umpire; he is 'the governor of the trial for the purpose of assuring its proper conduct,' and has a perfect right—albeit a right that should be exercised with care—to participate actively in the trial proper." Logue v. Dore, 103 F.3d 1040, 1045 (1st Cir. 1997) (quoting Quercia v. United States, 289 U.S. 466, 469 (1933)). Additionally, when addressing allegations of judicial bias, a court must consider "whether the comments were improper and, if so, whether the complaining party can show **serious prejudice**." Ayala-Vazquez, 751 F.3d at 24 (emphasis added) (quoting United States v. DeCologero, 530 F.3d 36, 56 (1st Cir. 2008)).

First, Ayala-Vazquez attacks a series of comments made by the court to let the jury know, on multiple occasions, that certain individuals mentioned during trial were named in the

Indictment, despite the fact that neither the witness nor the prosecutor tied those individuals by name to the Indictment. See Docket No. 1 at 33. Petitioner argues that in making these comments, the court expressed its belief that the charged conspiracy existed, and that Ayala-Vazquez was the leader. See id.

Petitioner raised this issue on appeal, but the First Circuit concluded that "[b]ecause Ayala is unable to show prejudice, we need not, it turns out, determine whether the trial judge acted improperly in this case: even if the judge erred, we must affirm if we conclude that any such error was harmless." Ayala-Vazquez, 751 F.3d at 25. He now argues that appellate counsel was ineffective because he did not argue that trial counsel was ineffective in failing to object to the court's comments as soon as they were made. The problem for Petitioner is that if the judge's comments did not cause Ayala-Vazquez prejudice, *and he fails to demonstrate so*, then the argument that trial counsel was ineffective for not objecting to the comments necessarily fails the prejudice prong of the Strickland test.

Second, Ayala-Vazquez claims that the judge evinced bias when he commented to defense counsel during the cross-examination of a witness: "[b]ut the fact is that she did say that. She's not lying to you." See Crim. Docket No. 2999 at 100. Petitioner interprets this comment as the court usurping the fact-finding function of the jury. See Docket No. 1 at 34-35.

The comment at issue occurred during the cross-examination of a particular witness, Maribel Olivo Rivera ("Olivo"). During direct examination, Olivo testified that at one point a co-defendant in the case, Jonathan Rivera Romero (also known as "Bebo"), handed her $1,000. When she asked Bebo who sent her the money, he turned around and pointed over

to a group of people that included Ayala-Vazquez. Afterwards, the prosecution asked Olivo what reason she could have had for receiving the money, but she never answered because Ayala-Vazquez's counsel quickly objected that the question was speculative. The court sustained the objection. See Crim. Docket No. 2999 at 67. During cross-examination, Olivo reiterated her previous testimony that Bebo pointed his finger at a group of people and that Ayala-Vazquez was among them. Defense counsel then stated that she "never testified before that 'Bebo' told you that." Id. at 99. The judge decided to clarify any confusion by explaining that Olivo had, in fact, testified during direct examination that Bebo pointed his finger at that particular group of people. Contrary to what Petitioner suggests, the clarification of a fact already on the record does not entail, and in fact cannot be construed as vouching for the credibility of this particular witness.

The last comment that Petitioner takes issue with occurred when the judge told Ayala-Vazquez's counsel that he is "not giving all the facts." Crim. Docket No. 2999 at 106. This statement was made immediately after the judge sustained the prosecution's objection that defense counsel was misstating a witness' prior testimony. The judge was merely clarifying why he chose to sustain the objection. It would be a stretch of the imagination to conclude that the judge was "telling the jury what the Court believed the evidence to be." Docket No. 1 at 35. The court thus concludes that the comments challenged by Petitioner were not improper.

Now, Ayala-Vazquez further contends that his appellate counsel was ineffective because he did not challenge the last two comments on appeal. However, upon a careful review of Petitioner's § 2255 motion and supplemental filings, the court finds that he has

demonstrated neither an objectively deficient performance on this basis nor prejudice. As such, his claim fails under both prongs of the Strickland test.

### E. Prosecutor's Comments

Petitioner argues that the Government vouched for the credibility of its witnesses at trial, and, as a result, misled the jury and the court. See Docket No. 1 at 36. The instances on record that Petitioner points to in support thereof follow the same general pattern. That is, the Government called Ayala-Vazquez's co-defendants as witnesses, asked them about their plea agreements and, specifically, their responsibility under the same. This last question elicited the same answer from the witnesses, to wit, that they had agreed to give truthful testimonies at trial in the event that they were in fact called to testify. See id. at 36-40. For the reasons that follow, the court finds that the prosecution's questions during the examination of these witnesses did not constitute improper vouching.

It is understood that "[a] prosecutor improperly vouches for a witness when she places the prestige of her office behind the government's case by, say, imparting her personal belief in a witness's veracity or implying that the jury should credit the prosecution's evidence simply because the government can be trusted." United States v. Perez Ruiz, 353 F.3d 1, 9 (1st Cir. 2003). Vouching requires something more than merely asserting that a witness' testimony ought to be accepted as truthful by the jury. See Perez-Ruiz, 353 F.3d at 10. Additionally, the admission of plea agreements into evidence by themselves does not constitute vouching. See United States v. Martin, 815 F.2d 818, 821 (1st Cir. 1987). Vouching would have occurred if the prosecution had expressed his personal opinion that any particular witness should be trusted or if the Government presented a redacted version of

the transcript, leaving the jury with a false picture of what the bargain entailed. See id. Neither of these scenarios occurred in the present case.

Here, the record shows that each time the prosecution asked the witnesses about their responsibility to tell the truth under the plea agreements, she also asked them about the benefits that they expected to receive as a result of their cooperation. See Crim. Dockets No. 2999 at 42, 3002 at 73, 3012 at 46, 3017 at 7, and 3018 at 76. In light of the foregoing, the court concludes that no vouching occurred because the jury had access to the whole picture presented by each of the witnesses' plea agreements and it could "assess, as best it can, the probable motives or interests the witnesses could have in testifying truthfully or falsely." Martin, 815 F.2d at 821. Consequently, Petitioner's claim on this ground fails.

Additionally, Ayala-Vazquez argues that his appellate counsel was ineffective because he did not raise the present issue on appeal. First, there is "no constitutional duty to raise every issue, where, in the attorney's judgment, the issue has little or no likelihood of success." Colon-Diaz v. United States, 899 F. Supp. 2d 119, 134 (D.P.R. 2012) (quoting Jones v. Barnes, 463 U.S. 745, 751-53 (1983)). Second, the argument now raised by Petitioner had little to no likelihood of success on appeal. Thus, the court would be hard pressed to find that appellate counsel was deficient for failing to raise it. Third, even assuming for argument's sake that the attorney's performance was deficient, Ayala-Vazquez would still need to demonstrate prejudice—i.e., the existence of a reasonable probability that, but for counsel's errors, he would have prevailed on appeal. See id. Since Ayala-Vazquez has not shown such a probability, his ineffective assistance of counsel claim fails as well.

*F. Government's Alleged Misrepresentation*

Ayala-Vazquez challenges his life-sentence by alleging that the Government misled the court as to his true culpability in the charged drug conspiracy. Petitioner points out that he was named the leader of the drug conspiracy charged in Crim. No. 09-173, but not in Crim. No. 11-045, where he was charged with a subordinate role. Petitioner suggests that this inconsistency shows that he was not the leader of the drug conspiracy in Crim. No. 09-173, thus his sentence should have been less than life. See Docket No. 1 at 40-42.

The court acknowledges that Ayala-Vazquez was, in fact, charged with conspiring to import drugs into the United States in both Crim. No. 09-173 (Count Two) and Crim. No. 11-045 (Count One). When the second case came around, Ayala-Vazquez tried to get the importation charge dismissed on double jeopardy grounds arguing that both cases dealt with a single conspiracy. See Crim. No. 11-045, Docket No. 66. The court denied his motion upon concluding that Ayala-Vazquez had taken part in different conspiracies to commit the same crime. See id., Docket No. 97. The court now finds that the reasons stated in support of that conclusion sufficiently dispel Petitioner's claims regarding his culpability and role in the drug-trafficking conspiracies. In the interest of thoroughness, the court reiterates them below.

As explained back then, the fact is that the conspiracy charged in Count One of Crim. No. 11-045 continued for more than a year after the one charged in Count Two of Crim. No. 09-173. Second, there was no significant overlap between the persons involved in both conspiracies; the defendants indicted in each of the cases were different, *except for Ayala-Vazquez*. Finally, there was no significant correlation between the acts that gave rise to the

conspiracies, other than the fact that they both involved importation of cocaine. It is also important to mention that the evidence presented at trial was enough to demonstrate Petitioner's leadership role in the conspiracy charged in Crim. No. 09-173, and more importantly, for a reasonable jury to conclude so. Indeed, in rejecting Ayala-Vazquez's sufficiency challenge on appeal, the First Circuit held that "[f]rom this evidence, a reasonable jury could conclude that Ayala was intricately involved—and indeed, controlled—the entire DTO and all of its operations at Barbosa." Ayala-Vazquez, 751 F.3d at 12.

Ayala-Vazquez contends that his trial counsel was ineffective for failing to present this information to the court and that his appellate counsel was ineffective for not raising this claim on appeal. Petitioner believes that he would have received a sentence less than life had the court known about his true role in the charged drug conspiracies. But upon a careful review of his motion, the court finds that Petitioner has not demonstrated either prong of the Strickland test. Even assuming for argument's sake that counsel's performance was objectively unreasonable on this basis, Ayala-Vazquez has not shown that, but for his attorney's omission, he would have received a lesser sentence or prevailed on appeal. Given the First Circuit's conclusion, *supra*, presuming prejudice is too much of a stretch at this stage. Thus, the court rejects Petitioner's last-breath attempt at attacking his conviction and sentence.

## IV. CONCLUSION

For the reasons previously explained, the court finds that Ayala-Vazquez's claims lack merit. Accordingly, his request for habeas relief under 28 U.S.C. § 2255 (Dockets No. 1, 22,

28) is **DENIED**. The case is, therefore, **DISMISSED WITH PREJUDICE.** Judgment shall be entered accordingly.

## V. CERTIFICATE OF APPEALABILITY

It is further ordered that no certificate of appealability should be issued in the event that the Petitioner files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED**.

In San Juan, Puerto Rico, October 31, 2018.

S/ JUAN M. PÉREZ-GIMÉNEZ
**JUAN M. PÉREZ-GIMÉNEZ**
**SENIOR U.S. DISTRICT JUDGE**
